Janet TSCHETTER, Appellant,

v.

DOLAND BOARD OF EDUCATION of DOLAND SCHOOL DISTRICT # 56–2, Appellee.

No. 13141.

Supreme Court of South Dakota.

Argued Jan. 14, 1981.

Decided Feb. 18, 1981.

James C. Robbennolt of Duncan, Olinger, Srstka, Maher & Lovald, Pierre, for appellant.

Raymond A. Gallagher of Gallagher & Battey, Redfield, Rodney Freeman Jr., of Churchill, Manolis, Wheeler & Freeman, Huron, for appellee.

HEUERMANN, Circuit Judge.

This is an appeal from a judgment of the circuit court that affirmed the decision of the Board of Education of the Doland School District # 56–2(the board) not to renew the teaching contract of Janet Tschetter (appellant) for the 1978–79 school year. We affirm.

The board hired appellant in late January of 1973 to teach English and Speech in the Doland school system. Appellant had previously taught four years at Huron High School after graduating from Huron College with a Bachelor of Arts in Speech. Appellant had six college credit hours of English but was certified in the field of Language Arts by the Department of Public Instruction. Appellant also taught adult education classes two nights a week and intermittently substituted in the Huron school system from 1968 to 1972. During this same time, appellant taught at the James Valley Christian School for one and one-half years. Upon her entry into the Doland system, appellant was credited with three years of experience on the system's graduated pay scale.

Appellant contracted to teach Journalism and English I, II and III for the 1977–78 school year. She was also responsible for oral interpretation, one-act plays, the annual, and the school paper.

On March 16, 1978, the board informed appellant of its intent not to renew her contract for the 1978–79 school year. Appellant requested specific reasons for this intention and Don Mendel, president of the board, responded with a letter citing incompetency, neglect of duty, insubordination and violation of contract. The letter then went on to list several specific manifestations of the above-cited grounds. A letter informing appellant of the board's determi-

nation not to renew her contract, pursuant to SDCL 13–43–10, was received on April 4, 1978, and appellant asserted her right under the "continuing contract" law to a formal hearing before the board, which was held on April 21, 1978. Appellant was represented at this hearing by one Mr. Mondale. On April 24, 1978, appellant received the final decision of the board to terminate her contract. The board's decision was unanimous.

Under authority of SDCL 13–46–6, an appeal was taken to the circuit court and a hearing was held on November 8, 1979. The circuit court found that the board's decision not to renew was not clearly erroneous and judgment was entered accordingly on March 17, 1980. An appeal to this court followed.

At the circuit court hearing, the board called Mendel and Edward Wickre, school superintendent, as witnesses. While Wickre was on the stand, the board's counsel introduced and the court admitted into evidence, exhibits 1 and 2. Exhibit 1 was appellant's official school personnel file and contained observations and evaluation reports pertaining to appellant's teaching ability. The file also contained letters and notifications relevant to this litigation, and memos, letters and various other forms of correspondence between Mr. Stan Heffner, the high school principal, and appellant. Except for a few letters signed by Mendel, all of the items in exhibit 1 were prepared by Heffner. Exhibit 2 contained this material plus other notes and messages from Heffner to appellant. Attached to a majority of the items in both of these exhibits were responses written and entered into the file by appellant.

The board concedes in its brief that its decision was based solely upon these exhibits and the recommendations of Heffner and Wickre. Exhibits 1 and 2 were also introduced at the April 21, 1978, hearing before the board, at which time appellant's representative, Mondale, questioned Heffner and disputed several items contained in these exhibits.

It is noted that up to and including the 1977–78 school year, Doland had a succes-sion of high school administrations which left the school supply procurement and requisition system in disarray. With this in mind, at the outset of the 1977–78 school year Wickre and Heffner, both new to the district, set rigid policies regarding supply requisitions, curriculum content, attendance and the overall operation of the school system. This posture towards administration was apparently at the behest of the school board.

Appellant presents two grounds for vacation of the circuit court's decision affirming the board's determination. First, appellant argues that the trial court committed reversible error by admitting exhibits 1 and 2 because the exhibits were hearsay and were lacking in proper foundation for admission. Secondly, appellant argues that the board's decision was arbitrary, unreasonable, capricious, and an abuse of its discretion.

■ Before addressing the substantive questions raised by the appeal, the applicable principles need to be addressed. The appeal contemplated by SDCL 13–46–6 is not a trial de novo in the true sense of the phrase. The appeal has the limited function of receiving evidence solely for determining the legality, and not the propriety, of the school board's decision. *Moran v. Rapid City Area School Dist.*, 281 N.W. 2d 595 (S.D.1979). The rationale behind the limited nature of a trial de novo in a continuing contract case is rooted in the constitutional doctrine of separation of powers: "School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law." *Moran,* supra, at 598.

■ In determining the legality of the board's decision, the circuit court reviews the decision in two aspects. First, the circuit court must review the procedural regularity of the board's action. That procedure is not at issue in this appeal and thus will be disregarded in this decision. Secondly, the circuit court may reverse or modify the

board's decision if substantial rights of appellant have been prejudiced because the board's findings, inferences, conclusions, or decisions are clearly erroneous in light of the entire evidence in the record, or are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[1]

■ The proper scope of review for this court is the same as that of the trial court. We are not bound by a presumption that the trial court's decision is correct. *Moran, supra.*

Appellant argues that exhibits 1 and 2 were inadmissible because the board failed to lay the proper foundation by not calling Heffner, who had personal knowledge of the facts which were reported in various entries into the personnel files, to testify. The board argues that the exhibits fit within the business records exception to the hearsay rule found at SDCL 19–16–10.[2] Appellant argues that irrespective of this State's adoption of SDCL 19–16–10, based on Federal Rules of Evidence 803(6), the board was still obligated to call Heffner to lay a proper foundation for the admission of exhibits 1 and 2, because the records contained opinions of the author, Heffner. Appellant cites several cases in support of this.[3]

■ This position is without merit. Mondale was present as appellant's repre-

---

1. SDCL 1–26–36(5) and (6). It is noted that this statute was amended July 1, 1978, by replacing the substantial evidence test with the clearly erroneous test. The circuit court applied the clearly erroneous test as the appeal from the board's decision was tried to that court on November 8, 1979. Although the operative facts giving rise to this litigation occurred prior to the amendment in question, the sensitive time in determining which test applies is when the circuit court proceedings were held. *South Dakota Public Utilities v. Otter Tail,* 291 N.W.2d 291 (S.D.1980); *Matter of Certain Territorial Elec. Boundaries, Etc.,* 281 N.W.2d 65 (S.D.1979); *In the Matter of the Petition for Declaratory Ruling Filed for Clay Union Electric Corporation,* 300 N.W.2d 58 (S.D.1980); *Moran v. Rapid City Area School Dist.,* 281 N.W.2d 595, n.5 (S.D.1979).

2. SDCL 19–16–10 provides as follows:

   A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, is not excluded by § 19–16–4, even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this section includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

   SDCL 19–16–4 declares that hearsay is not admissible except as provided by law.

3. The cases cited by appellant are distinguishable from the facts before this court for various reasons. In *Perkins v. Springstun,* 557 S.W.2d 343 (Tex.Civ.App.1977), the accountant's report in question was not in the hands of a custodian or other qualified witness with knowledge of preparation of the document and the report was compiled for the purposes of litigation and not in the ordinary course of business. *In Matter of Swan,* 173 Mont. 311, 567 P.2d 898 (1977), the court explicitly stated that the records involved there did not qualify as business records. In *Messina v. Zody,* 13 Ill.App.3d 566, 300 N.E.2d 851 (1973), the records involved were hospital reports and the court required the presence in court of the nurses who actually made the entries into records. SDCL 19–16–10 clearly contemplates that a custodian may lay the proper foundation, and those same records would have been admissible had Illinois had a statutory counterpart to SDCL 19–16–10. In *Empire Mutual Insurance Co. v. Stroud,* 43 A.D.2d 931, 353 N.Y.S.2d 184 (1974), the investigative report in dispute was prepared for the purposes of litigation and the trustworthiness of the report would accordingly be called into question. In *Brooks v. Fairman,* 253 Md. 471, 252 A.2d 865 (1969), the person on the witness stand, when a doctor's bill was entered into evidence, was not a custodian or other qualified witness who could testify as to the preparation of the record. *Knox Lime Company v. Maine State Highway Com'n,* 230 A.2d 814 (Me.1967), arose in a jurisdiction which did not accept opinions in a business record for the purposes of a hearsay exception. SDCL 19–16–10 explicitly states that opinions are permissible. The other cases cited by appellant are distinguishable for similar reasons.

sentative at the board meeting to examine Heffner with respect to the files and no request was made to have a transcript of the board hearing prepared. In addition, exhibits 1 and 2 clearly qualify as business records under SDCL 19–16–10. SDCL 13–43–26 requires that records of this type be compiled by school administrators and SDCL 13–46–4 requires that the records objected to be certified and transmitted to the circuit court upon appeal. Each entry was made at or near the time of the occurrence of the event reported by Heffner or by some other person with personal knowledge. Wickre, as custodian of these records, testified to these matters before the circuit court. The expanded statutory definition of business certainly entails the public school. There is nothing, in the circumstances in which these records were compiled, to indicate their untrustworthiness. Appellant alleges that Heffner was biased against her and that this colored the contents of exhibits 1 and 2. It is noted, however, that the majority of the materials authored by Heffner and entered in the files were accompanied by a response from appellant. Most responses acknowledged the basic facts underlying the entry into the personnel file, but offer an excuse or explanation for the event or occurrence giving rise to the entry. Thus the record shows that the files are trustworthy, in that most of the events reported therein actually occurred, as is evident in appellant's response.[4]

Accordingly, we hold that under SDCL 19–16–10, exhibits 1 and 2 were properly admitted as business records.

■ Appellant also asserts that the trial court was in error in finding that the board's decision was not clearly erroneous. The question for us on appeal, under the "clearly erroneous" standard, is not whether we would have made the same decision as the administrative agency, but whether, after reviewing the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. *Matter of South Lincoln Rural Water System*, 295 N.W.2d 743 (S.D.1980).

■ After applying this exacting standard, we are not prepared to say that a mistake has been made. The board obviously adopted a policy demanding fiscal responsibility and accountability from the administration. The administration exacted this from the professional staff at Doland High School. Exhibits 1 and 2 are replete with examples where appellant was cited for not adhering to proper school policy. Appellant was reprimanded for leaving her classes unsupervised, for missing a teachers' meeting, for not following requisition procedures with respect to school supplies, for not following district policy in attending extracurricular events, and for discussing school policy in front of students. To each and every one of these separate instances reported by Heffner in the files, appellant submitted a response which acknowledged the occurrence of the underlying event giving rise to the report, but which went on to offer a justification, excuse, or a different characterization of the facts.

In addition to these policy violations noted by Heffner, exhibits 1 and 2 are also replete with criticism of appellant's method of instruction. Heffner filed four evaluative reports and each one made reference to appellant relying too much on workbooks as a matter of teaching English grammar and not developing other forms of instruction. Lesson planning was also unacceptable to Heffner. On January 31, 1978, appellant's lesson plans for the next week were rejected because of appellant's failure to note or distinguish between class content and class assignment for English I, II, and III classes. The lesson plans submitted for journalism for this same week had the following objectives: Monday—to become responsible writers; Tuesday—improve writing and getting

---

4. See also, *Fox v. San Francisco Unified School Dist.*, 111 Cal.App.2d 885, 245 P.2d 603 (1952), and *Griggs v. Board of Trustees of Merced Union H.S. Dist.*, 61 Cal.2d 93, 37 Cal.Rptr. 194, 389 P.2d 722 (1964), which hold that under the Uniform Business Records as Evidence Act evaluative reports compiled by school administrators are admissible over a hearsay objection, as business records.

work in on time. Apparently the journalism class was used to complete the annual and school paper and appellant did not give normal structured class lessons. In the spring semester of 1977, appellant was also reprimanded for failing to submit seventeen lesson plans that were required by school district policy.

Heffner's evaluation reports stated that in his opinion appellant was not adequately qualified to teach English and that this inadequacy forced her to rely on workbooks. Heffner found appellant's method of instruction unacceptable and her lesson planning nebulous. The board, as evidenced by its decision, accepted these evaluations and for this reason voted unanimously not to renew her contract.

■ At this point, the court is mindful of the principle that school boards are vested with the power to contract with teachers and that the decision to renew or not to renew a contract is vested with the board and not with the courts. SDCL 13–43–9.1 through 13–43–10.1. As stated in *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, 265 N.W.2d 262, 265 (S.D.1978): "If there is one thread that runs through our decisions that have interpreted the provisions of our continuing contract law, it is that the courts should show great deference to the good faith determinations of school district boards made upon the basis of competent, credible evidence." As stated previously, legality and not propriety of the board's decision is the test upon court review.

Accordingly, the judgment of the circuit court is affirmed.

DUNN, MORGAN and HENDERSON, JJ., concur.

McKEEVER, Circuit Judge, concurs.

HEUERMANN, Circuit Judge, sitting for WOLLMAN, C. J., disqualified.

McKEEVER, Circuit Judge, sitting for FOSHEIM, J., disqualified.